The **FEDERAL LAND BANK OF OMAHA, A Corporation,** Appellant,

v.

**Eldon L. ARNOLD, Rhonda J. Arnold, Donald Arnold and Neva Mae Arnold, Defendants,**

State of Iowa, Intervenor–Appellee.

No. 87–1309.

Supreme Court of Iowa.

June 15, 1988.

John C. Monroe of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for amicus curiae Mut. Ben. Life Ins. Co.

Thomas J. Miller, Atty. Gen., and Tim Benton, Asst. Atty. Gen., for intervenor-appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and SNELL, JJ.

NEUMAN, Justice.

On May 25, 1987, the Iowa General Assembly enacted legislation which significantly and retroactively altered the law with respect to the redemption of homesteads situated on agricultural land which has been foreclosed. *See* 1987 Iowa Acts ch. 142, § 29 (hereinafter the "Act"). This appeal challenges a district court decision which upheld the Act's constitutionality against a claim that three of its subsections violate various provisions of the Iowa and United States Constitutions. The issues now before us, ably briefed and argued by counsel, address squarely the power of the legislature to ameliorate the suffering and dislocation which has wracked Iowa farm families in recent years. But we are convinced that the means used to achieve this noble end cannot withstand scrutiny under constitutional doctrine prohibiting denial of equal protection of the law and the impairment of contracts by the State. We must therefore reverse the district court.

I. The facts giving rise to this controversy are not disputed. In February 1986, plaintiff Federal Land Bank of Omaha (FLB) filed a petition to foreclose its mortgage on 420 acres of agricultural land owned by defendants Eldon, Rhonda, Donald and Neva Mae Arnold. Two months later, FLB was granted summary judgment

in the sum of $404,626.10 with interest at 15.25 percent, costs and attorney fees. Pursuant to the provisions of chapter 628 then in effect, the decree of foreclosure granted Arnolds a one-year period of redemption following sheriff's sale. Prior to sale, Arnolds designated two forty-acre homesteads, one for each Arnold couple, in accordance with Iowa Code section 654.16 (1987) (enacted by 1986 Iowa Acts ch. 1216, § 2).

At the sheriff's sale held June 18, 1986, FLB successfully bid on the all three parcels. Arnolds made no redemption in the year following sale. Thus, under the decree of foreclosure and the law in effect at the time of the sheriff's sale, FLB would have been entitled to sheriff's deeds for all of the foreclosed real estate on June 19, 1987. *See* Iowa Code § 626.95, 626.98, and 628.3 (1985).

Meanwhile, the Iowa legislature amended Iowa Code section 654.16, effective June 4, 1987, to retroactively extend the redemption period for agricultural homesteads in certain cases and to revise the procedure for valuing such a homestead subject to redemption. *See* 1987 Iowa Acts ch. 142, §§ 4, 5, 28. Section 4 of the Act provides that if a designated homestead is sold at a foreclosure sale to satisfy the judgment, the court shall determine its fair market value. Section 5 provides that the mortgagor may redeem the designated homestead by tendering the fair market value

at any time within two years from the date of the foreclosure sale, pursuant to the procedures set forth in chapter 628. However, this paragraph shall not apply to a *member institution* which has purchased a designated homestead at a foreclosure sale.

(Emphasis added.) "Member institution" is defined in section 5 as "any lending institution that is a member of the federal deposit insurance corporation, the federal savings and loan insurance corporation, the national credit union administration, or an affiliate of such institution." For such institutions, the redemption period is only one year, subject to a right of first refusal granted the mortgagor for one year there-

after. *See* 1987 Iowa Acts ch. 142, § 5. Finally, section 28 of the Act provides, in pertinent part, that these amendments apply to foreclosure sales held after the effective date of the act and

to foreclosure sales of agricultural land held within one year before the effective date of this Act if the holder of the sheriff's certificate of sale is a mortgagee who has not sold or otherwise disposed of the agricultural land and whose mortgage was enforced by the foreclosure sale.

At the time these amendments took effect, FLB had not sold or otherwise disposed of the agricultural land obtained through foreclosure of the Arnold mortgage. More importantly, as a member of the farm credit system, FLB did not qualify for the preferred, one-year redemption period accorded "member institutions" under section 5 of the Act. Thus the amendments required FLB, at the end of what *had* been the redemption period, to allow Arnolds yet another year to exercise their redemption rights to the homestead and to accept, in lieu of the amount bid at sheriff's sale, the fair market value of the homesteads in satisfaction of its judgment.

In an attempt to challenge the enforcement of these amendments, FLB filed a petition for supplemental relief in the foreclosure proceedings. *See* Iowa R.Civ.P. 266. It claimed the amendments violated the contract, commerce, and supremacy clauses of the United States Constitution and the equal protection and due process clauses of the United States and Iowa Constitutions. The State of Iowa intervened in order to defend the constitutionality of the challenged amendments. After hearing, the district court upheld the constitutionality of the Act, thereby denying FLB's request for supplemental relief.

On appeal, FLB renews its constitutional challenges. Specifically, FLB claims that section 5 of the Act (establishing redemption periods based on member/non-member classification) denies FLB equal protection under the law in violation of the fourteenth amendment to the United States Constitution and Article I, section 6 of the Constitu-

tion of the State of Iowa; that sections 4, 5, and 28 of the Act impair the contractual obligations existing between FLB and Arnolds in violation of Article I, section 10 of the United States Constitution (contract clause); that sections 4, 5 and 28 violate FLB's right to due process under the fourteenth amendment of the United States Constitution and Article I, section 9 of the Constitution of the State of Iowa, and violate Article I, section 8, (commerce clause) of the United States Constitution; and that section 5 violates the supremacy clause of the United States Constitution, Article VI.

II. Our review of FLB's constitutional claims is de novo. *Iowa Auto Dealers Ass'n v. Iowa State Appeal Bd.*, 420 N.W.2d 460, 462 (Iowa 1988). Because of the presumption of constitutionality accorded legislative acts, FLB bears the heavy burden of proving the Act's unconstitutionality beyond a reasonable doubt. *See id., see also Roth v. Reagen*, 422 N.W.2d 464, 467 (Iowa 1988). For the reasons discussed below, we are persuaded that FLB has successfully carried that burden with regard to its claimed denial of equal protection and contract impairment. Thus we need not address the merits of the remaining constitutional claims. *Harryman v. Hayles*, 257 N.W.2d 631, 635 (Iowa 1977).

III. The thrust of FLB's equal protection argument is that the establishment of different redemption periods for "member" and "nonmember" institutions impermissibly burdens nonmember institutions with a limitation on their right to liquidate foreclosed property which is twice as long as that endured by member institutions. Such a discriminatory classification, claims FLB, violates the equal protection clauses of the federal and state constitutions.

The parties agree that because the distinction drawn involves neither a fundamental right nor an inherently suspect classification, the legislation need withstand only the least rigorous equal protection scrutiny. *See New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17 (1976); 49 L.Ed.2d 511, 517. Known as the "rational basis test," this standard allows us to uphold legislative classifications which bear a rational relationship to a legitimate state interest. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 881, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751, 761 (1985). Whether we examine the challenged statute under the federal or state equal protection clauses, our scrutiny is the same. *Miller v. Boone County Hosp.*, 394 N.W.2d 776, 778 (Iowa 1986). To overcome the presumption of legislative constitutionality, FLB must prove that no conceivable state of facts could justify the class distinction drawn by the statute. *In re Bishop*, 346 N.W.2d 500, 505 (Iowa 1984). This deferential scrutiny is particularly appropriate where, as here, the state is exercising its police power in the realm of economic policy and regulation. *New Orleans v. Dukes*, 472 U.S. at 303, 96 S.Ct. at 2516, 49 L.Ed.2d at 517. But even in the economic sphere, a citizen's guarantee of equal protection is violated if desirable legislative goals are achieved by the state through wholly arbitrary classifications or otherwise invidious discrimination. *See Chicago Title Ins. Co. v. Huff*, 256 N.W.2d 17, 28 (Iowa 1977).

By definition, applying the rational basis test to an equal protection challenge involves a two-step analysis. First we must examine the legitimacy of the end to be achieved; we then scrutinize the means used to achieve that end. *See generally* L. Tribe, *American Constitutional Law* 1439–1443 (2d ed. 1988). That task is simplified in the present case because FLB concedes the legitimacy of the challenged legislation's public purpose. It has no quarrel with the social and economic benefit to be gained through measures such as extended redemption periods and fair market valuation of homesteads, which, as expressed by the trial court would "provide the farm community some relief from recession of the farm economy." Nor does FLB contest the State's view that such relief "may enable some farmers to stay in their homes and to therefore retain a foothold from which they can return in some manner to farming."

The question is whether these legitimate goals are rationally served by a legislative

scheme which extends the redemption period solely for those mortgagors whose homesteads have not been purchased at sheriff's sale by members of the FDIC, FSLIC or other "member" institution defined by statute. Here we must examine the rationale advanced by the State and adopted by the trial court to justify this class distinction:

> For one, the Legislature may have concluded that a larger redemption period was necessary for non-member institutions because, unlike member institutions, the non-member institutions do not have a stake in the community and therefore do not have the incentive to work out arrangements with farmers in which the homesteads could be retained at fair market value. Secondly, the Legislature may have determined that a longer redemption period was necessary because non-member institutions are under no legal obligation to dispose of farmland acquired through foreclosure within a specified time, as are member institutions.

In evaluating the reasons for the classification advanced by the trial court, and FLB's contrary claim that the distinction drawn is both arbitrary and unreasonable, we are obliged to consider "matters of common knowledge and common report and the history of the times." *Miller v. Boone County Hosp.*, 394 N.W.2d at 779 (quoting *State v. Bartels*, 191 Iowa 1060, 1073, 181 N.W. 508, 515 (1921)). We note preliminarily that the district court's focus on the concerns of mortgage lenders—though consistent with the tenor of the statute—defines too narrowly the class of persons affected by the discriminatory classification. By the statute's terms, the distinction in redemption periods is triggered by the identity of the sheriff's sale purchaser, not the status of the institution or individual extending credit in the first instance.

Assuming that mortgagees constitute the great majority of sheriff's sale purchasers, the fact remains that the "non-member" classification includes individual mortgage holders residing in Iowa, Iowa insurance companies, Iowa mortgage companies who are not FDIC or FSLIC insured and federal land bank associations that are controlled by Iowa farmer-borrowers. Given the investment of these Iowans, we are compelled to disagree with the assertion that "member" institutions have a greater "stake" in the community justifying preferred status in redemption. Nor are we convinced, for the same reasons, that from the class distinctions drawn by the legislature one could reasonably know which lender was more or less likely to forebear in the case of a financially-strapped farmer.

As for the justification that non-member institutions, unlike member institutions, are not legally obligated to dispose of farmland acquired through foreclosure within a specified time, such a ground for discrimination cannot withstand examination under the rational basis test. Only *some* member institutions such as state banks and national banks are under time limits to dispose of real estate acquired through foreclosure. *See* Iowa Code § 524.910(2); 12 U.S.C. § 29 (1982). The State does not refute FLB's assertion that such requirements would not apply to out-of-state banks lending in Iowa. Nor are we aware of any such obligation for other "member" institutions such as savings and loan associations and credit unions.

Moreover, we are unable to conceive—or impute to the legislature—a rational relationship between the length of time given the holder of a sheriff's deed to dispose of acquired real estate and the length of time given a mortgagor to redeem a designated homestead. Discrimination in redemption periods based solely on the identity of the purchaser at the foreclosure sale simply bears no rational relationship to the public purpose of providing relief to farmer-mortgagors in financial distress by keeping them in their homes, on the land.

Extending the homestead redemption period to two years for all farmer-mortgagors would, however, advance this legislative goal. In keeping with our obligation to preserve as much of the statute as possible within constitutional restraints, *Harryman v. Hayles*, 257 N.W.2d at 635, we declare unconstitutional only that portion of section 5 of House File 599 which discrimi-

nates between member and non-member institutions and impermissibly grants to member institutions a shorter, one-year redemption period.

IV. Article I, section 10 of the United States Constitution provides that "No state shall ... pass any ... law impairing the obligation of contracts." FLB claims sections 4, 5 and 28 of the Act impermissibly impair the contractual obligations existing between mortgagees and mortgagors in the following respects:

1. The period of redemption for designated homesteads has been retroactively lengthened from one year to two years.

2. The redemption amount may be changed after the sheriff's sale from the amount bid at the sale to the "fair market value" of the homestead as determined by the court at some unspecified time after the sale but before the redemption period expires.

3. The redemption amount does not accrue interest from the date of the sheriff's sale and there is no compensation provided for the mortgagee or successful bidder during the redemption period.

4. In the event of a redemption at "fair market value," the lender is left without security for the difference between the redemption amount and the amount of judgment or bid.

The district court concluded that the amendments to section 654.16 do operate as a substantial impairment of the contractual relationship between FLB and the Arnolds, but upheld the challenge to the Act's constitutionality on the ground that the legislature reasonably adopted those procedures necessary "to remedy a broad, general economic problem" within the state. Our appellate review of that conclusion requires consideration of the history and application of the contract clause, to which we now turn.

The contract clause was made a part of the federal constitution in an effort to prevent states from enacting debtor relief laws. J. Nowak, R. Rotunda, J. Young, *Constitutional Law* 461 (2d ed. 1983). The framers recognized that credit would be essential to the growth of the nation's economy, and that financiers would require assurance that the extention of credit could not be abrograted by state legislatures. *Id.* at 462; *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 427, 54 S.Ct. 231, 236, 78 L.Ed. 413, 423 (1934); *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, 629, 732 P.2d 710, 714 (1987). Thus the purpose of the contract clause was to limit the states' exercise of police power in the area of contractual relations. But the restriction is not absolute, and in applying the clause, courts have struggled to balance states' vital public interests with the need to preserve contractual rights and obligations. *See Blaisdell*, 290 U.S. at 429, 54 S.Ct. at 236, 78 L.Ed. at 424.[1]

In *Blaisdell*, the United States Supreme Court upheld the Minnesota Mortgage Moratorium Act of 1933 which authorized the extension of redemption periods following foreclosure sale from eighteen months to three years. Enacted to grant relief during the economic crisis of the Great Depression, the legislation had a fixed, two-year expiration date. Debtors who benefitted by the extended redemption period were required to apply income or a fair rental value determined by the court toward taxes, insurance, interest, and mortgage indebtedness. Thus the Court found that while the form of remedy had changed, the substantial contract rights of the parties remained unimpaired:

> The statute does not impair the integrity of the mortgage indebtedness. The obligation for interest remains. The statute does not affect the validity of the sale or the right of a mortgagee-purchaser to title in fee, or his right to obtain a deficiency judgment, if the mortgagor fails to redeem within the prescribed period. Aside from the extension of time, the other conditions of redemption remain

1. For a thorough analysis of the historical development of Iowa foreclosure law as a product of a deliberate choice favoring protection of the mortgagors over provision of mortgage credit, *see generally* Bauer, *Judicial Foreclosure and Statutory Redemption: The Soundness of Iowa's Traditional Preference For Protection Over Credit,* 71 Iowa L.Rev. 1 (1985).

unaltered. While the mortgagor remains in possession he must pay the rental value.

*Blaisdell*, 290 U.S. at 425, 54 S.Ct. at 235, 78 L.Ed. at 421. Upholding the constitutionality of the Minnesota Act, the court identified five criteria by which a legislative enactment could survive a challenge based on impairment of contract: (1) an emergency created a need for the measure; (2) the legislation was addressed to a legitimate public purpose and not for the mere advantage of particular individuals; (3) the relief afforded was appropriate to the emergency; (4) the conditions imposed by the act were reasonable; and (5) the statute was temporary and limited to the exigency which called it forth. *See id.* at 444–47, 54 S.Ct. at 242–43, 78 L.Ed. at 432–34.

This court followed *Blaisdell* in a 1934 challenge to Iowa's depression-era mortgage moratorium act. *See Des Moines Joint Stock Land Bank of Des Moines v. Nordholm*, 217 Iowa 1319, 253 N.W. 701 (1934). Applying the *Blaisdell* criteria, the court concluded the moratorium could be constitutionally upheld because the act addressed a general economic emergency, contained a two-year expiration clause which limited the relief to the exigency calling it forth, and imposed reasonable conditions which included compensation for the mortgagee during the redemption period. *See id.* at 1331, 253 N.W. at 707.[2]

At the other end of the depression-era spectrum, the United States Supreme Court found unconstitutional an Arkansas statute which dramatically changed the terms by which the payment of special assessments were enforced, to the detriment of municipal bond holders. *W.D. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 58–59, 55 S.Ct. 555, 556, 79 L.Ed. 1298, 1300–01 (1935). The legislation at issue in *Worthen* in-

creased the interval from default to foreclosure from sixty-five days to two-and-one-half years, decreased the default penalty from twenty percent to three percent, suspended the mortgagor's obligation to pay attorney fees and costs, and allowed the debtor possession of the property for four years after foreclosure. The Supreme Court characterized these changes as "an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security." *Id.* at 62, 55 S.Ct. at 557, 79 L.Ed. at 1302.

In the years since *Blaisdell* and *Worthen*, the United States Supreme Court has refined the test for contract clause challenges to a three-step analysis: (1) if the state law operates as a substantial impairment of a contractual relationship, (2) the state must have a significant and legitimate public purpose behind the regulation, which (3) adjusts the contracting parties' rights and responsibilities based on reasonable conditions appropriate to the public purpose. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 580–81 (1983). In *Energy Reserves*, the court upheld a Kansas statute regulating the price of natural gas sold at a wellhead in the intrastate market, retreating from its earlier requirement that the public purpose justifying the contract impairment must address an emergency or temporary situation. *See id.* at 412, 103 S.Ct. at 705, 74 L.Ed.2d at 581.[3]

Two recent cases from neighboring states have applied the *Energy Reserves* standard to legislation directed at the farm crisis of the mid-80's. In *Neel v. First Federal Savings & Loan Ass'n of Great Falls*, 207 Mont. 376, 392, 675 P.2d 96, 105 (1984), the Montana Supreme Court upheld the retroactive application of legislation increasing the homestead exemption from

---

**2.** Later legislative attempts to extend the Iowa moratorium were struck down by this court for failure to meet the "emergency" standard of *Blaisdell*. *See First Trust Joint Stock Land Bank of Chicago v. Arp*, 225 Iowa 1331, 1335, 283 N.W. 441, 443 (1939) and *John Hancock Mut. Life Ins. Co. v. Eggland*, 225 Iowa 1073, 1074, 283 N.W. 444, 444 (1939). We are unaware of any subsequent Iowa cases interpreting the contract clause.

**3.** *But see Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249, 98 S.Ct. 2716, 2725, 57 L.Ed.2d 727, 739 (1978) regarding the continued validity of this consideration under the third step of the *Energy Reserves* analysis.

$20,000 to $40,000. The *Neel* court found that the change substantially impaired a lender's right to a deficiency judgment in the event of foreclosure, but noted that the homestead exemption had been heavily regulated in the past, that the loan was made subject to further homestead exemption legislation, and that regular increases in the exemption over the past fifty years should have alerted the mortgagee to the possibility of an increase and the potential risk to the security of its collateral. *Id.* at 393, 675 P.2d at 105. Thus the court found the legislative amendment reasonable under the second and third steps of the *Energy Reserves* contract clause analysis as a measure necessary to ensure "an adequate homestead exemption to the people of Montana." *Id.*, 675 P.2d at 105.

By contrast, the Kansas Supreme Court recently found its Family Farm Rehabilitation Act unconstitutional, concluding that the conditions imposed by the legislature were unreasonable under the *Blaisdell* and *Energy Reserves* standards when applied to the legitimate public purpose of stabilizing the agricultural economy. *See Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, 636, 732 P.2d 710, 718 (1987). Those conditions included redemption at fair market value instead of the judgment amount, preventing the mortgagee from bidding at judicial sale or obtaining a deficiency judgment, reducing the rate of interest from that provided in the contract, and authorizing redemption of any part or parcel of the mortgaged land. *Id.* at 634–35, 732 P.2d at 718. The court reasoned that under these circumstances, "all institutions and persons making farm loans would cease doing so because the statute impairs the security for such loans," a result clearly at odds with the goal of economic stabilization. *Id.* at 637, 732 P.2d at 718.

The legislation at issue before us clearly falls somewhere between the benign, narrowly focused relief found constitutional in *Blaisdell, Nordholm,* and *Neel,* and the "oppressive and unnecessarily destruct[ive]" conditions rejected in *Worthen* and *Bott.* There can be no serious dispute that allowing a mortgagor to redeem the homestead at fair market value instead of the mortgage balance significantly impairs the obligation existing under the mortgagor's contract with the lender. Nor do the parties to this action question the public purpose motivating the legislature to fashion remedies designed to stabilize the agricultural economy by keeping farmers on their land. Thus our inquiry is narrowed to the third prong of the *Energy Reserves* analysis: whether the impairment of the parties' contractual rights and obligations is based on reasonable conditions and of a character appropriate to the public purpose.

We have already concluded that extension of the redemption period based solely on the arbitrary classification of sheriff's sale purchasers is neither reasonable nor rationally related to achieving the public purpose sought. But we are willing to defer to the legislative wisdom that a two-year redemption period, if applicable to *all* mortgagors, would constitute a reasonable condition of a character appropriate to the legislative goal. Thus the only question remaining is whether the *retroactive* application of the two-year redemption period, accompanied by the mortgagor's right to redeem at fair market value rather than the amount bid at sale, can be considered reasonable. Based on the previously cited authority, we think not.

Our opinion is shaped by the fact that the redemption adjustments found reasonable in *Blaisdell* and *Nordholm* left the integrity of the mortgage indebtedness unimpaired. In each case, the object of the legislation was *forebearance,* not *forgiveness.* Nevertheless, even a scheme such as that embodied in the Act before us, which enables a debtor to redeem at fair market value, would meet the standard of *Blaisdell* and *Nordholm* if applied prospectively. That is, had the fair market value been established prior to sheriff's sale, FLB could have adjusted its bid on the designated homestead parcels to reflect their fair market value at time of sale, securing its deficiency judgment on the remaining acreage. But being subjected to the retroactive application of new redemption terms after sheriff's sale, FLB stands the risk of losing a substantial portion of its judgment. *See* Iowa Code § 628.3 ("Any real

property redeemed by the debtor shall thereafter be free and clear from any liability for any unpaid portion of the judgment under which said real property was sold.")

Moreover, we agree with FLB that the amendments, though incorporating the redemption provisions of Iowa Code chapter 628, are silent with respect to the assessment of interest. Under section 628.13, a title holder would ordinarily redeem by tendering to the clerk of court the amount of the sheriff's certificate of sale "with interest at contract rate on the certificate of sale from its date." Under the amendment, which allows the redemption amount to be changed to fair market value at some unspecified time after sale but before expiration of the redemption period, it appears that any interest accruing on the bid amount would be lost to the mortgagee or other successful bidder.

We are persuaded that the uncertainty created by the retroactive application of sections 4 and 5 of the Act unreasonably impairs the integrity of the judgment secured by the mortgage foreclosure decree. At best, only prospective application of the statute's terms will comport with the constitutional standard of "reasonable conditions" established for contract clause challenges.

V. In summary, we hold that determination of redemption periods based on the member/non-member classification contained in section 5 of the Act violates the equal protection clause of the Iowa and United States Constitutions and is therefore unconstitutional. We also hold that section 28 of the Act, making retroactive the application of sections 4 and 5, unconstitutionally violates the contract clause of the United States Constitution and may not be enforced.

We therefore reverse the decision of the district court and remand the case for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**