**In the Matter of the ESTATE OF Mary H. SEROVY, Deceased.**

**Allan J. Serovy and Pearl M. Serovy, Appellants.**

No. 04–0848.

Supreme Court of Iowa.

March 24, 2006.

Robert N. Downer and Margaret T. Lainson of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellants.

Thomas J. Miller, Attorney General, and Barbara E.B. Galloway, Assistant Attorney General, for appellee Iowa Department of Human Services.

CARTER, Justice.

Allan Serovy and Pearl Serovy, the son and daughter-in-law of Mary H. Serovy, deceased, appeal from an order of the probate court subjecting a joint-tenancy interest in real estate held by Mary at the time of her death to a claim of the Iowa Department of Human Services for the cost of medical assistance provided to

Mary as a Medicaid recipient. Allan and Pearl are the surviving joint owners of the property. They urge that, to the extent Iowa Code section 249A.5(2) (2003) authorizes the ruling of the probate court, that statute is an unlawful impairment of the obligation of a contract between Mary and them, thus violating Article I, Section 10 of the Constitution of the United States and article I, section 21 of the Iowa Constitution. The district court rejected that contention, and so do we.

The property at issue was for many years Mary's home. It was located in Solon. Prior to the death of her husband Frank in 1966, she and Frank owned the property in joint tenancy. Following Frank's death, Mary owned the property in fee simple and continued to reside there. In the mid–1980s, Mary's health began to deteriorate. Her son, Allan, and daughter-in-law, Pearl, who lived on a farm located seven miles from Solon, found it necessary to visit Mary several times each day in order to assist her in caring for herself.

Mary hoped to remain in her home as long as possible, and to aid in accomplishing that wish, she entered into an agreement with Allan and Pearl whereby they, at their own expense, would build an addition on Mary's home in order to provide additional living space for themselves and their daughter, as well as for Mary. As part of the agreement, they would move into the home and provide Mary with care and assistance in her daily living. It was agreed that Mary would execute a warranty deed conveying her residence to herself, Allan, and Pearl, as joint tenants with right of survivorship.

Allan and Pearl did build an addition on Mary's house at their own expense, with Allan and his sons doing much of the labor. On March 14, 1988, after the improvements had been substantially completed, Mary executed the warranty deed transferring title to the property to herself, Allan, and Pearl as joint tenants. Allan, Pearl, and their daughter moved into Mary's home in 1989, at which time some of the remodeling was yet to be completed. Allan and Pearl cared for Mary in the family home until 1997, when Mary's condition required her relocation to a nursing home. She remained in the nursing home until her death on October 11, 1998, during which time she received medical-assistance benefits under Title XIX of the Social Security Act.

On November 30, 1998, Allan filed a petition for probate of Mary's will without present administration. On April 17, 2003, the Estate Recovery Program of Health Management Systems, an agent for the Iowa Department of Human Services, filed a claim in Mary's estate for reimbursement of $28,707.54 plus accruing interest, which was alleged to be the cost of medical assistance provided to Mary under Medicaid in 1997 and 1998. On April 21, 2003, Ben Chatman, an agent of the Estate Recovery Program, petitioned for probate of Mary's will with administration. That was granted. Chatman was appointed executor.

On December 11, 2003, a special executor was appointed to review the Medicaid-reimbursement claim presented by the Estate Recovery Program. The special executor filed a report recommending that the claim be allowed. On February 16, 2004, the executor filed a motion seeking an order granting him authority to sell Mary's home to satisfy the Medicaid-reimbursement claim and other obligations of the estate. Allan and Pearl filed a formal resistance to the executor's motion, raising the constitutional issues that they are urging on this appeal.

The probate court ruled that invoking Iowa Code section 249A.5(2) in order to

subject Mary's joint-tenancy interest to payment of the Medicaid-reimbursement claim did not result in an impairment of the obligation of any contract between Mary and her son and daughter-in-law. The court concluded that the contract between those parties had been fully performed prior to the time that Iowa Code section 249A.5(2)(c) and (d) was enacted in 1994.

## I. *Scope of Review.*

■ We review the ruling of the probate court de novo because this is classified as an equitable proceeding pursuant to Iowa Code section 633.33. We give weight to the fact-findings of the district court, but are not bound by them. Iowa R.App. P. 6.14(6)(g).

## II. *Impact of Medicaid Recovery Legislation on Mary Serovy's Joint–Tenancy Interest.*

A. *The 1994 Medicaid recovery legislation.* The controversy now before the court has arisen as the result of an amendment to Iowa Code section 249A.5 in 1994, which expanded the category of assets that can be reached by the Iowa Department of Human Services to satisfy claims filed in decedents' estates for the cost of medical-assistance benefits provided to Medicaid recipients. That legislation contained the following provisions.

2. The provision of medical assistance to an individual who is fifty-five years of age or older, or who is a resident of a nursing facility, . . . who cannot reasonably be expected to be discharged and return to the individual's home, creates a debt due the department from the individual's estate for all medical assistance provided on the individual's behalf, upon the individual's death.

. . . .

c. For purposes of this section, the estate of a medical assistance recipient, surviving spouse, or surviving child includes any real property, personal property, or other asset in which the recipient, spouse, or child had any legal title or interest at the time of the recipient's, spouse's, or child's death, to the extent of such interests in jointly held property, retained life estates, and interests in trusts.

d. For purposes of collection of a debt created by this subsection, all assets included in the estate of a medical assistance recipient, surviving spouse, or surviving child pursuant to paragraph "c" are subject to probate.

1994 Iowa Acts ch. 1120, § 10 (amending Iowa Code § 249A.5).

We have previously considered the effect of this legislation in *In re Estate of Laughead*, 696 N.W.2d 312 (Iowa 2005), and *In re Barkema Trust*, 690 N.W.2d 50 (Iowa 2004). Our decision in *Laughead* permitted the recapture of the value of a life estate for satisfaction of a Medicaid-reimbursement claim subsequent to the death of the recipient. Our decision in *Barkema* allowed a Medicaid recipient's beneficial interest in a discretionary support trust to be subjected to a claim for the cost of Medicaid services, following the death of the recipient, although all interest in the trust was to pass to a named beneficiary upon the recipient's death.

In discussing the right to reach the assets in the discretionary-support trust in *Barkema*, we considered and discussed the situation of joint-tenancy property. As to such property, we observed:

[B]esides interests in trusts, the Medicaid recovery statute includes jointly held property in the definition of "estate." Under property law, joint tenancy property passes by operation of law to the other joint tenant when one joint tenant

dies. If "at the time of death" meant "at the moment of death," the jointly held property would already have passed to the decedent's joint tenant at the time when the decedent's "estate" is to be defined for purposes of the Medicaid recovery statute. This interpretation of "at the time of death" would render the legislature's inclusion of jointly held property in the definition of "estate" meaningless.

*Id.* at 56.

■ Although the discussion of joint-tenancy property in the *Barkema* case was dictum, we are satisfied that it sets forth an accurate depiction of how the Medicaid recovery legislation affects joint-tenancy interests. The purpose of this legislation was to capture and make available for payment of Medicaid-reimbursement claims certain interests in property that are not ordinarily subject to the payment of a decedent's debts. Because other types of jointly held property, such as tenancy in common, have always been available for the payment of claims in probate, the legislature must have intended the reference to "jointly held property" in section 249A.5(2)(c) to embrace joint-tenancy interests.

B. *Whether the Medicaid recovery legislation impairs the obligation of a contract affecting Allan and Pearl's interest.* Allan and Pearl argue that the probate court erred in rejecting their constitutional challenge under the obligation-of-contract clauses of the federal and state constitutions. The federal constitutional provision on which they rely provides "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The Iowa constitutional provision they have invoked provides that "[n]o ... law impairing the obligation of contracts shall ever be passed." Iowa Const. art. I, § 21.

■ In applying these constitutional provisions, we have recognized that the prohibition therein contained is not absolute and must yield to a reasonable exercise of the police power for the public good. *Adair Benevolent Soc'y v. State Ins. Div.,* 489 N.W.2d 1, 5 (Iowa 1992); *Amana Soc'y v. Colony Inn, Inc.,* 315 N.W.2d 101, 112 (Iowa 1982). In *Federal Land Bank of Omaha v. Arnold,* 426 N.W.2d 153 (Iowa 1988), we adopted a three-step analysis for dealing with constitutional claims alleging abrogation of the obligation of a contract. That analysis is:

(1) [I]f the state law operates as a substantial impairment of a contractual relationship, (2) the state must have a significant and legitimate public purpose behind the regulation, which (3) adjusts the contracting parties' rights and responsibilities based on reasonable conditions appropriate to the public purpose.

*Arnold,* 426 N.W.2d at 159. In deciding the constitutional challenge lodged by Allan and Pearl, the probate court went no further than the first step outlined above and concluded that the legislation has caused no impairment of a contractual relationship. We agree with that conclusion and uphold the ruling on that ground.

■ The probate court found that the contract between Mary on the one hand and Allan and Pearl on the other required no more of Mary than her creation of a property interest in which these three individuals owned the property that had been Mary's residence as joint tenants with right of survivorship. The probate court concluded that this obligation on Mary's part was satisfied upon the execution and delivery of a warranty deed establishing the respective property interests on which the parties had agreed. The probate court's interpretation of the agreement appears to us to be consistent with the evi-

dence concerning the intention of the parties. We favor that interpretation of the contract on our de novo review and may affirm the probate court's ruling on that basis. Under that interpretation of the contract, the statute being challenged did not alter what was agreed to among the parties, it simply affected the subject matter of the agreement after it had been fully performed.[1]

■ Allan and Pearl contend that the agreement was not simply to create a joint-tenancy interest in the property for each of the three joint tenants named in the deed, but also included a promise on Mary's part to have her joint interest in the property transferred to Allan and Pearl in fee simple upon her death without impairment or diminution. Even if we accept this interpretation of the agreement, that will not support a finding that the obligation of the parties' agreement has been impaired by the statute. If Mary had contracted to transfer her joint interest in the property to Allan and Pearl in fee simple without encumbrance, the Medicaid recovery legislation did not discharge that obligation. It simply made it impossible for her to perform the contract, but under circumstances in which the impossibility would not discharge the obligation. A promisor is not discharged from a contractual duty on the theory of impossibility if the promisor brought about the occurrence that has prevented performance. *Associated Grocers of Iowa Coop., Inc. v. West,* 297 N.W.2d 103, 108 (Iowa 1980).

The circumstances that prevented Mary from transferring the agreed exchange to Allan and Pearl upon her death were of her own making as a result of her applying for and receiving Medicaid benefits subsequent to the enactment of section 249A.5(2)(c) and (d). The situation is the same as if a judgment creditor had levied on and sold her joint interest in the property during her lifetime. Consequently, even if the agreement was as it has been urged to be by Allan and Pearl, they have a breach-of-contract claim against Mary, the unimpaired obligation of which survived her death, pursuant to Iowa Code section 611.20. *See Jackson Sawmill Co. v. United States,* 580 F.2d 302, 311–12 (8th Cir.1978) (legislation diluting city's ability to retire revenue bonds resulted in city's breach of contract for acting pursuant to the legislation, but did not impair the obligation of contract in violation of the constitution).

### III. *Payment of Costs of Administration and Fees From Interest in Property Subjected to Probate Under Section 249A.5(2)(d).*

■ In addition to allowing the Estate Recovery Program's claim for Medicaid reimbursement to be satisfied in whole or in part from Mary's interest in the property that she owned jointly with Allan and Pearl, the ·district court authorized the payment of costs of administration, including fees for the personal representative and the special executor from the funds received from the sale of that interest. Allan and Pearl assert that this was not authorized because the property interests that are captured by section 249A.5(2)(c) and (d) may only be used for payment of Medicaid-reimbursement claims. We disagree. Under subparagraph (d) of the legislation, the jointly owned interest of the deceased Medicaid recipient is made part of the estate in probate. As such, it

---

1. The situation is not dissimilar from that presented in *Laughead,* 696 N.W.2d at 317–18, in which we rejected an impairment-of-obligation-of-contract challenge to the application of section 249A.5(2)(c) to recapture the value of a life estate established in a deed executed by a deceased Medicaid recipient during her lifetime.

is available for payment of the costs of administration.

## IV. *The Extent of the Interest Subject to Administration in Probate.*

■ The probate court's order clearly identifies the interest that is subject to administration in probate pursuant to section 249A.5(2)(*d*) as Mary's one-third interest in the subject property. Notwithstanding that finding on the court's part, it proceeded to order the sale of the entire property with the provision that one-third of the proceeds after costs of sale were to be utilized for the payment of the medical-assistance claim under Medicaid and the costs of administering the estate. Although this disposition may have been prompted by the court's desire to accelerate a possible future order for partition among the joint owners of the property, we are convinced that it was beyond the power of the court to order the sale of Allan and Pearl's interests in the property at this stage.

■ It is axiomatic that a decedent's personal representative is only empowered to sell the decedent's interest in property owned at the time of death in order to satisfy claims. This rule has been expressed as follows:

> A decedent's personal representative's authority to sell real property extends only to the decedent's estate's interest in the property; a personal representative is not empowered to exercise dominion over property that was never owned by the decedent or the estate. Thus, if the decedent held title to the property as a tenant in common, only that interest may be sold.

31 Am. Jur. 2d *Executors & Administrators* § 739, at 498 (2002). Similarly, in *Green v. Gustafson*, 482 N.W.2d 842 (N.D. 1992), the court stated:

> We agree . . . that [the personal representative's] authority to sell the prop-

erty extended only to Marvin's estate's interest therein, which consisted of Marvin's 1/3 interest and the 1/3 interest of George's heirs which was quieted in Marvin's estate in the action to quiet title. . . . It is axiomatic that the personal representative is not . . . empowered to exercise dominion over property which was never owned by either the decedent or the estate.

*Green*, 482 N.W.2d at 846. We modify the district court's order so as to limit the property that may be sold by the personal representative to the one-third joint interest owned by Mary immediately prior to her death.

As an alternative to a sale of property to satisfy the Medicaid-reimbursement claim, the probate court established a buyout figure. In describing that figure in their argument on appeal, Allan and Pearl suggest that the figure was the amount of the Medicaid-reimbursement claim plus accumulated interest. In reading the probate court's order it appears to us that the figure was the court's valuation of Mary's one-third interest in the property immediately prior to her death. We are satisfied that any buyout figure that the Estate Recovery Program can be made to accept in lieu of a sale of the property must require payment of its claim plus all accumulated interest. Of course, the parties are free to negotiate an alternative buyout figure that would avoid the sale of Mary's interest in the property.

We have considered all issues presented and conclude that the orders of the probate court should be affirmed as modified in our opinion. Costs on appeal are assessed to Allan and Pearl.

**AFFIRMED AS MODIFIED.**