William KNEPPER and Callista
Knepper, Appellees,

v.

MONTICELLO STATE BANK and Earl
Decker, Appellants.

No. 89–234.

Supreme Court of Iowa.

Jan. 24, 1990.

As Corrected Feb. 2, 1990.

Chad C. Leitch and Stephen C. Krumpe, of O'Connor & Thomas, P.C., Dubuque, for appellant Monticello State Bank.

Louis P. Pfeiler, of Pfeiler & Beckman Law Offices, Dubuque, for appellant Earl Decker.

Larry R. Kurt, of Cable Car Law Offices, Dubuque, for appellees.

Diane M. Stahle, Des Moines, for amicus curiae Iowa Bankers Ass'n.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

William and Callista Knepper owned farm land in Dubuque county. They gave Monticello State Bank (MSB) a promissory note secured by a mortgage on the land. On May 14, 1986, the Kneppers transferred the land to MSB by a deed in lieu of foreclosure. On February 5, 1987, MSB transferred the land to Earl Decker by installment contract. Prior to this transfer, MSB did not offer the Kneppers an opportunity to repurchase the land, as required by Iowa Code section 524.910(2) (1987).

The Kneppers brought an action to set aside the transfer to Decker, to require MSB to extend to them an opportunity to repurchase the land, and to recover damages caused by MSB's failure to offer them the opportunity to repurchase. Decker and MSB (appellants) filed motions to dismiss, asserting among other things that Iowa Code section 524.910(2) denied them equal protection and due process of law. *See* U.S. Const. Amend. 14; Iowa Const. art. I, §§ 6 & 9. The district court overruled their motions to dismiss, upholding the constitutionality of the statute. We granted MSB and Decker permission to appeal in advance of final judgment.

The appellants argue that the statute denies equal protection of the law because it applies only to state banks. They also argue that the statute is so vague that granting the relief requested by the Kneppers would be fundamentally unfair—a violation of the guarantee of due process of law. Because we conclude the statute is not unconstitutional, the ruling of the district court is affirmed.

■ Our scope of review is de novo because constitutional issues are involved. *Federal Land Bank of Omaha v. Arnold*, 426 N.W.2d 153, 156 (Iowa 1988). In addition to the limited record on a motion to dismiss, we take judicial notice of events and conditions which are generally known and matters of common knowledge within our jurisdiction. *Priest v. Whitney Loan & Trust Co.*, 219 Iowa 1281, 1293, 261 N.W. 374, 380–81 (1935). We must also keep in mind the particular character of the issues and the parties or persons in interest to correctly apply legal principles. Here we are dealing with the relationship between a state bank and a borrower. The relations of the parties and the rules of law applicable are not in all respects the same as those between individuals or private corporations. *Id.* at 1285, 261 N.W. at 376.

I. *Equal Protection.*

■ Unless fundamental rights (such as first amendment rights) or inherently suspect classifications (such as race or national origin) are involved, a statutory classifi-

cation is presumed constitutional. *Chicago Title Ins. Co. v. Huff,* 256 N.W.2d 17, 25 (Iowa 1977). This is so under both the state constitution and the federal constitution. *Arnold,* 426 N.W.2d at 156. Since no fundamental rights or suspect classifications are involved in this case, the appellants must prove that no conceivable state of facts could justify the classification in order to overcome the presumption of constitutionality. *Id.*

■■■ Where, as here, the state is exercising its police power in the area of economic policy and regulation, deferential scrutiny is particularly appropriate. *Id.* Accordingly, under the rational basis test applied in considering equal protection challenges to regulation of economic and commercial matters, a statute will be upheld if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 195–96, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497, 513 (1983).

The appellants concede the statute serves a legitimate state purpose. They identify the purpose of the statute as providing the farm community some relief from recession of the farm economy. However, we examine the language of the statute in light of the context in which it is found and the times in which it was adopted in order to satisfy ourselves as to its purposes.

The statute requires state banks to transfer away real property acquired by virtue of some preexisting debt within five years. The relevant language of Iowa Code section 524.910 provides:

A state bank may acquire property of any kind to secure, protect or satisfy a loan or investment previously made in good faith. Property acquired pursuant to this section shall be held and disposed of subject to the following conditions and limitations:

. . . .

2. Real property purchased by a state bank at sales upon foreclosure of mortgages or deeds of trust owned by it, or acquired upon judgments or decrees ob-

tained or rendered for debts due it, or real property conveyed to it in satisfaction of debts previously contracted in the course of its business, or real property obtained by it through redemption as a junior mortgagee or mortgage creditor, shall be sold or otherwise disposed of by the state bank within five years after title is vested in the state bank, unless the time is extended by the superintendent. . . . Before the state bank sells or otherwise disposes of agricultural land held pursuant to this subsection, the state bank shall first offer the prior owner the opportunity to repurchase the agricultural land under the terms the state bank proposes to sell or dispose of the agricultural land.

The object of section 524.910(2) is to regulate the use and disposal of real property acquired by state banks in satisfaction of debts previously contracted. Such statutes are enacted to keep the capital of the banks in the stream of commerce, to deter banks from engaging in real estate speculation, and to prevent the accumulation of large masses of real estate in the hands of the banks. *See, e.g., Union Nat'l Bank of St. Louis v. Matthews,* 98 U.S. 621, 626, 25 L.Ed. 188, 189 (1879). Iowa has required state banks to dispose of such real property since 1874. *See* 1874 Iowa Acts ch. 60, § 10 (codified at Iowa Code section 1797 (McClain 1888)).

■■■ The right granted to the prior owner of agricultural land by section 524.-910(2) is sometimes called a right of "preemption" or of "first refusal." *See Black v. First Interstate Bank of Fort Dodge,* 439 N.W.2d 647, 650 (Iowa 1989); *Imperial Refineries Corp. v. Morrissey,* 254 Iowa 934, 940, 119 N.W.2d 872, 876 (1963). Unlike an "option," a preemption does not give to the preemptioner the power to compel an unwilling owner to sell. *Trecker v. Langel,* 298 N.W.2d 289, 290–91 (Iowa 1980). A preemption merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption. *Id.* Once the owner decides to sell the property, the preemption ripens into an option. *See Black,* 439

N.W.2d at 650; *Morrissey*, 254 Iowa at 940, 119 N.W.2d at 876. The preemptioner may then elect whether to buy the land. If the preemptioner decides not to buy, then the owner may sell to anyone. *Trecker*, 298 N.W.2d at 291 (citing 6 *American Law of Property* § 26.64 at 507 (A.J. Casner ed. 1952)).

■ The object of the preemption provision is to regulate further the disposal of real property which is agricultural land by favoring the previous owner, who was indebted to the bank, over some other prospective purchaser. It was clearly intended to reduce foreclosure losses by making it possible for affected farmers to regain their farms. *Emmet County State Bank v. Reutter*, 439 N.W.2d 651, 655 (Iowa 1989).

In considering a similar provision applicable to Farm Credit System lenders (such as Production Credit Associations and Federal Land Bank Associations), the federal district court stated:

> The common sense of this principle is obvious. The bank is not hurt because it gets the same terms it was willing to take in any event; as between the newcomer third party and the previous owner, the previous owner is legislatively preferred because he may well have emotional ties to the land, friends and family in the area, established local economic contacts and the like.

*Payne v. Federal Land Bank of Columbia*, 711 F.Supp. 851, 854 (W.D.N.C.1989) (considering 12 U.S.C. § 2219a). *See also* Colo.Rev.Stat. § 13–40–125 (Supp.1986); Minn.Stat. § 500.24(6) (1987); Mont.Code Ann. § 25–13–902 (1987).

We have no doubt the provision seeks to promote legitimate state purposes. It regulates the disposal of real estate held by state banks. It favors the prior owner of agricultural land over other prospective purchasers. It places a minimal burden on state banks in order to do so.

■ We next examine whether the legislature had some rational basis for applying the preemption provision only to state banks. State banks are peculiarly within the regulatory authority of the state. *Priest*, 219 Iowa at 1285–88, 261 N.W. at 376–79. States generally may distinguish between state banks and other financial institutions or lenders. *See, e.g., Little v. American State Bank of Dearborn*, 263 Mich. 645, 648–49, 249 N.W. 22, 23 (1933); *Placek v. Edstrom*, 148 Neb. 79, 91–95, 26 N.W.2d 489, 497–99, 174 A.L.R. 856, 867–69 (1947); Annot., *Statute Regulating Banks and Trust Companies as Special or Class Legislation, or as Denying the Equal Protection of the Laws*, 111 A.L.R. 140 (1937).

■ The equal protection clause does not oblige the state to regulate or reform all types of associations and organizations or none. *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 472, 65 S.Ct. 1384, 1394–95, 89 L.Ed. 1725, 1740 (1945). The state may exclude from regulatory measures organizations which it has reason to believe are already appropriately regulated by either state or national legislation. *Id.* Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955). In fact, the range of financial institutions and lenders subject to preemption provisions has broadened since the amendment to section 524.910(2). *See* 12 U.S.C. § 2219a; Iowa Code § 654.16.

In sum, the legislature could have reasonably concluded in 1985 that the preemption provision should apply only to state banks. State banks, unlike some other institutions, and their relationships to their borrowers are peculiarly within the police power of the state. Because state banks already were required to dispose of land under Iowa Code section 524.910(2), the legislature could begin with state banks. We hold the classification inherent in Iowa Code section 524.910(2) does not deny equal protection of the law.

This case differs from *Federal Land Bank of Omaha v. Arnold*, 426 N.W.2d 153 (Iowa 1988), and *Federal Land Bank of Omaha v. Lockard*, 446 N.W.2d 808

(Iowa 1989). Here, the classification is based on the status of the institution extending credit in the first instance. *Arnold*, 426 N.W.2d at 157 (distinction not based on the status of the institution or individual extending credit in the first instance). We do not have before us a legislative classification based on some factor unrelated to the lender-borrower relationship. *See Lockard*, 446 N.W.2d at 809 (classification based on borrower purchase of stock of lending institution).

## II. *Due Process.*

■■■ A civil statute is unconstitutionally vague under the due process clause when its language does not convey a sufficiently definite warning of proscribed conduct, as measured by common understanding or practice. *Greenawalt v. Zoning Bd. of Adjustment of Davenport*, 345 N.W.2d 537, 545 (Iowa 1984). When persons must necessarily guess at the meaning of a statute and its applicability, the statute is unconstitutionally vague. *Id.* A presumption of constitutionality exists which must be overcome by negating every reasonable basis on which the statute can be sustained. *Id.*

■■ Literal exactitude or precision is not necessary. *Id.* If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints against judicial legislation, the statute must be interpreted in that way. *Id.*

Where economic regulation is involved, the statute is subject to a less strict vagueness test "because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982) (footnotes omitted). Many times, the regulated enterprise has "the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* at 498, 102

S.Ct. at 1193, 71 L.Ed.2d at 371–72 (footnote omitted).

■■■ The appellants argue that MSB had to guess at the applicability of section 524.910(2) in light of Iowa Code section 654.19, which provides, in part:

In lieu of a foreclosure action in court due to default on a recorded mortgage or deed of trust of real property, if the subject property is agricultural land used for farming, ... the mortgagee or mortgagor may enter into an agreement in which the mortgagor agrees to transfer the agricultural land to the mortgagee in satisfaction of all or part of the mortgage obligation as agreed upon by the parties. The agreement may grant the mortgagor a right to purchase the agricultural land for a period not to exceed five years....

Standing alone, section 654.19 would allow a state bank to enter into an agreement in lieu of a foreclosure action which does not grant the mortgagor a right to repurchase the property. The Kneppers and MSB entered into such an agreement. We are not persuaded, however, that MSB had to guess at the applicability of section 524.910(2), which *requires* state banks to extend to the prior owner of agricultural land the opportunity to repurchase the land.

Both provisions are part of the alternative nonjudicial foreclosure procedure created by Senate File 577. *See* S.F. 577, §§ 34 & 47. In *Black v. First Interstate Bank of Fort Dodge*, 439 N.W.2d 647, 650 (Iowa 1989), we stated:

Viewing Senate File 577 as a whole, it becomes apparent that the amendment to section 524.910(2), creating the prior owner's opportunity to repurchase, is a part of the fabric of the Alternative Nonjudicial Foreclosure Procedure: section 654.19 generally establishes the Alternative Nonjudicial Foreclosure Procedure as it applies to all mortgage lenders and mortgagors; sections 628.26A and 628.29 tailor the redemption rights of debtors and other lienholders to fit this new foreclosure procedure; section 654.19 makes additional voluntary remedies available

to the parties to agricultural mortgages; and lastly, section 524.910(2) makes certain portions of the nonjudicial foreclosure procedure mandatory on state banks relative to agricultural real estate. *See* Bauer, *Judicial Foreclosure and Statutory Redemption: The Soundness of Iowa's Traditional Preference for Protection over Credit*, 71 Iowa L.Rev. 1, 51–54 (Iowa 1985).

A "reasonable state bank" disposing of property acquired under section 524.910(2) would act according to its terms notwithstanding any other provision of law generally applicable to foreclosure of agricultural mortgages. We hold the statute gives sufficient notice of its applicability, and, therefore, it is not unconstitutionally vague.

■ The appellants argue the statute is unconstitutionally vague because it fails to prescribe procedures for its implementation. Because MSB made no attempt to offer the Kneppers the opportunity to repurchase, we need not discuss these additional vagueness claims. A person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to hypothetical conduct. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369.

The district court properly rejected the constitutional claims asserted by MSB and Decker in their motions to dismiss. Since we are affirming the denial of motions to dismiss, this case is remanded for further proceedings.

AFFIRMED AND REMANDED.