Gerald D. HUNTER and Pearl
A. Hunter, Appellants,

v.

UNION STATE BANK and Ronald
Kniep, Appellees.

No. 92–51.

Supreme Court of Iowa.

Aug. 25, 1993.

Kermit Dunahoo of Dunahoo & Lawry, Des Moines, for appellants.

Ann M. Nielsen of Nielsen & Nielsen, P.C., Corning, for appellees.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

Gerald D. Hunter and Pearl A. Hunter lost 360 acres of farmland to Union State Bank through foreclosure. Later the bank accepted offers of purchase on four separate parcels of the land from four different buyers. All of the offers were subject to the Hunters' right to repurchase under Iowa Code section 524.910(2) (1987). The bank gave notice to the Hunters of these purchase offers and of their repurchase rights under section 524.-910(2). When the Hunters failed to respond to the notices by exercising their right to repurchase, the bank completed the sales to the third parties.

The Hunters then sued the bank and its president, Ronald Kniep, under several theories. After the case was tried but before a ruling was issued, the judge presiding over the case died.

Several months later a different judge from the same district ruled in favor of the bank and Kniep. The successor judge thought he could dispose of the case in the way the deceased judge had indicated to his law clerk he was going to rule: in favor of the defendants. Relying on Iowa Rule of Civil Procedure 367(b), the successor judge proceeded to do just that. On appeal, we vacated the ruling and remanded the case to the district court to consider the various options under Rule 367(b) in making a final ruling. *See Hunter v. Union State Bank,* 468 N.W.2d 456 (Iowa 1991) (*Hunter I* ).

On remand, a judge other than the successor judge was assigned the case. He opted to make a decision based on the transcript of the original trial. After reviewing the transcript and briefs and upon hearing oral arguments, this judge dismissed the Hunters' petition.

In this second appeal, the Hunters raise four issues. Their contentions are that (1) the district court abused its discretion under Rule 367(b) by not granting a new trial and permitting the parties to recall witnesses; (2) the notices the bank sent the Hunters were inadequate and failed to comply with section 524.910(2); (3) section 524.910(2) created implied contract or quasi-contract rights in the Hunters against the bank, requiring the bank to offer the land to the Hunters in one parcel; and (4) the actions of the bank and Kniep under section 524.910(2) violated the Hunters' civil rights, giving rise to a 42 U.S.C. section 1983 claim.

Finding the ruling of the district court correct on all four issues, we affirm.

I. *The Decision To Make a Ruling Based on the Transcript of the Original Trial.*

The Hunters' first contention is that on remand the district court abused its discretion by (1) not granting them a new trial, and (2) not allowing them to recall witnesses. They believe these omissions run afoul of the

requirements of Iowa Rule of Civil Procedure 367(b). In support of this contention, the Hunters argue that (1) the issues in the case are very complex, (2) the credibility of witnesses is of paramount importance, and (3) too much time elapsed between the original trial and review of the transcript on remand (two and one-half years). Without a new trial and the concomitant ability to recall witnesses, the Hunters believe the district court on remand was unable to make a fair and rational decision and based its conclusion on hearsay.

The bank and Kniep counter that the district court's actions on remand were a proper exercise of the wide latitude given trial courts in such situations. We agree.

In pertinent part Rule 367(b) provides:

In the event of the death ... of a judge who has under advisement ..., [a] case tried to him without a jury, any other judge of the district may be called in, ... to consider the same, and, *if by a review of the transcript or a reargument he can, in his opinion, sufficiently inform himself to enable him to render a decision, he shall do so*; otherwise he may order a continuance, declare a mistrial, or order a new trial of all or any of the issues, or direct the recalling of any witnesses, or make such disposition of the matter as the situation warrants.

Iowa R.Civ.P. 367(b) (emphasis added).

In *Hunter I*, we explained Rule 367(b) this way:

Subsection (b) of Iowa Rule of Civil Procedure 367 addresses the situation where the judge has died after a case tried to the court is under advisement. *Another judge may then review the transcript or order a reargument and decide the case.* If the case is not concluded in this manner, the judge may order a continuance, declare a mistrial or order a new trial. The judge may also direct the recalling of witnesses or make such disposition of the matter as the situation warrants.

*Hunter I*, 468 N.W.2d at 457–58 (emphasis added). We concluded the intent of Rule 367(b) mandated that the ultimate decision in the case be that of the successor judge. We

were also convinced that by such mandate "the parties are afforded a certainty of continuity to a decision without the presence of hearsay however reliable it may be." *Id.* at 458. Because we concluded the decision as presented to us was that of the deceased judge rather than the successor judge, we vacated the decision. We determined that the decision was not reviewable by us because of the successor judge's procedural misinterpretation of Rule 367(b). *Id.*

█ On remand Judge James W. Brown was assigned to hear the case. After hearing arguments from the parties on how to proceed under Rule 367(b), the judge reviewed the transcripts and exhibits in the case. He ruled that the record as it existed was complete to submit and decide the case. He entered an order in which he deemed the case submitted on the record made and set a hearing to permit the parties to make final arguments on the facts and law.

In the initial hearing on remand on the question of how to proceed under Rule 367(b), Judge Brown's comments explain his subsequent ruling to decide the case on the record made:

But until I review the transcript and [decide how to proceed], I think it would be premature in deciding exactly where we are going to go.... The case should be decided on the facts as they existed at the time of the trial and the fact that time has gone by since that time I think perhaps suggests a stronger argument for deciding the case on a transcript rather than a retrial because ... memories fade and witnesses become unavailable. We have a complete transcript of what everybody said and we know what the exhibits were at the time of the trial. There is no mistake. There is no question about different testimony. There is no question about missing witnesses. There are no memories fading. We have what they said. Now if ... we get into a problem of credibility of the witnesses and if that is a big problem, and I don't think I can determine that until I have reviewed the transcript; that would favor a retrial. If I have to determine this case on who the trial court believes, that is a strong argument for having the trial

court see those people and observe their testimony and weigh the conflicting stories by seeing them in life. It is not conclusive but it is an argument for doing it that way. [Defendant's counsel] suggests that many of the facts in this case are undisputed and what we are trying to determine—what the Court is trying to determine is how do I interpret those facts and it's more of a mixed fact law situation or what conclusion you should draw from those facts rather than a credibility situation. I might change my mind after I review the transcript but that is my initial thought.

We too have reviewed the record and agree entirely with Judge Brown's reasoning. Evidently credibility was not that crucial to the court's decision. And we agree with that assessment. Because we find a reasonable basis in the record for Judge Brown's decision to decide the case on the existing record, we find no abuse of discretion in refusing to order a new trial and permitting parties to recall witnesses. *See State ex rel. Miller v. National Dietary Research, Inc.*, 454 N.W.2d 820, 824 (Iowa 1990) (abuse of discretion found when district court gave no reasons to support its discovery protective order).

II. *Adequacy of Notices Under Iowa Code Section 524.910(2).*

The Hunters' second contention centers around the adequacy of the four separate notices the bank sent them. The Hunters think (1) that the notices were insufficient under section 524.910(2) as a matter of law, and (2) such insufficiency denied them due process of law. Specifically, the Hunters argue that each notice failed to adequately apprise them of their obligations and rights to repurchase under section 524.910(2). They also argue that one notice is "patently defective" on its face because it contains contradictory terms.

For reasons that follow we conclude the notices were adequate and did satisfy due process.

Section 524.910(2) requires that

[b]efore the state bank sells or otherwise disposes of agricultural land held pursuant to this subsection, the state bank shall first offer the prior owner the opportunity to repurchase the agricultural land on the terms the state bank proposes to sell or dispose of the agricultural land.

Neither party disputes the fact that section 524.910(2) does not prescribe any procedural notice requirements. In such circumstances all that is required is that the notice "state with reasonable certainty the essential facts required by law." *Woodruff & Son v. Rhoton*, 251 Iowa 550, 555, 101 N.W.2d 720, 723 (1960). *See also Buchholz v. Board of Adjustment*, 199 N.W.2d 73, 77 (Iowa 1972) ("When notice must be given but no method is prescribed, the notice must be a reasonable one under the circumstances."). The legislative intent on this point "must be ascertained from all the terms of the statute, related statutes, plus common sense and sound reasoning." *Woodruff & Son*, 251 Iowa at 555, 101 N.W.2d at 723.

All that section 524.910(2) required the bank to do was (1) offer the Hunters the opportunity to repurchase the land, (2) on the same terms under which the bank proposed to sell the land. The notices the bank sent through its counsel are in evidence. Each informed the Hunters that the notice was given pursuant to section 524.910. Each informed the Hunters how long they had to exercise their rights to repurchase. Each outlined the terms and conditions the Hunters were to meet. And each informed the Hunters that if they chose not to exercise their rights to repurchase, the land would be "sold to a third party upon these same terms and conditions." In short the notices the Hunters received told them the procedural and substantive "who, what, when, and where" of these rights of repurchase. As the district court correctly noted, "It is not reasonable for the Hunters, upon receipt of the notices, to take no action at all and later complain they were insufficiently informed."

Like the district court, we reject the Hunters' suggestion that new notices were required because certain sale terms were ultimately granted the third party purchasers which were not offered the Hunters. For example, two of the purchasers took possession before the closings and before the Hunters' time to exercise their repurchase rights had expired. And the bank charged them no

rent. But as the district court correctly pointed out, in each case possession was subject to the Hunters' rights to repurchase. And we agree with the district court's conclusion that "early possession and absence of rent are not material to the sale terms and had no effect on any of the Hunters' rights."

In addition, closing dates for two of the purchases were extended. And one purchaser was given additional time to present a written loan approval. The bank did not notify the Hunters of these changes. The district court found that the extensions were granted because of delays necessary to clear up title problems and were the kind of delays common to farmland transactions. The court also found that the extensions were granted after the time for the Hunters to exercise their repurchase rights had passed.

In concluding the bank substantially complied with section 524.910(2), the district court found:

> Implicit in the repurchase scheme of section 524.910(2) is that the bank will, in fact, dispose of the real estate on substantially the same terms offered the original owners. The deviations which took place here, after the preemption rights of the Hunters had expired, were not material deviations which destroyed the substantial identity between the terms offered the Hunters and those granted the purchasers. The essential performance terms—price, interest rates,[1] installment provisions, taxes—were the same. In the absence of bad faith, these minor differences did not result in a violation of the statute.
>
> . Furthermore, there is ample evidence showing these extensions simply made no difference to the Hunters. Because the Hunters had determined to reject all opportunities to repurchase less than all of the land, starting the process over again would only have led to the same result.

There is substantial evidence to support these findings of fact. And we agree with the district court's implicit conclusion that substantial compliance with section 524.-910(2) was all that was required. *See Superior/Ideal, Inc. v. Board of Review*, 419 N.W.2d 405, 407 (Iowa 1988) ("Substantial compliance is said to be compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.").

■ Finally, there was an inconsistency between two pages of one of the notices that was obviously due to a typographical error as the district court found. A common sense reading of the notice would easily lead one to decipher the true intent of the notice. Except for this one error, the notice was substantially like the other three. Gerald Hunter testified that as to this notice, he (1) did not ask the bank about the incongruity, (2) did not respond to that notice, and (3) would not have responded to the notice even if it had been corrected. On this state of the facts, we agree with the district court that the Hunters were not misled to their prejudice. *See In re Hansen's Guardianship*, 229 Iowa 914, 919, 295 N.W. 429, 432 (1940) (notice is sufficient even though conflicting statements are made in it, if there is no reasonable ground for believing the person receiving the notice was misled to the person's prejudice). The Hunters' claim that this notice was "patently defective" on its face does not therefore overcome the otherwise reasonable character of the notice.

■ The foregoing discussion also leads us to conclude that procedural due process was in no way offended by the four notices. To pass procedural due process muster, a notice must reasonably convey the required information and afford the interested party a reasonable time to respond. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). As our discussion points out, the bank amply satisfied these requirements.

III. *Implied Contract/Quasi–Contract Rights.*

The Hunters' third contention rests on the notion that section 524.910(2) somehow creat-

---

1. The district court apparently overlooked the fact that one purchaser was offered interest at 1¾% above the New York prime rate while the Hunters were offered interest at ¾% above this rate. Obviously, this difference benefited the Hunters and for that reason did not affect the validity of the notice.

ed some form of implied or quasi-contract between the parties that the bank breached through its actions. According to the Hunters, this alleged contract required the bank to offer the 360 acres at issue to the Hunters in one parcel, as opposed to piecemeal. The bank and Kniep dispute this theory, arguing that the language of section 524.910(2) implies no such agreement imposing such a requirement.

■ A review of our decisions construing section 524.910(2) and defining implied and quasi-contracts clarifies this point in favor of the bank and Kniep. Under section 524.910(2) the right of repurchase given the former owner is preemptive with respect to the disposition of the land by the bank—the current owner. *See Black v. First Interstate Bank,* 439 N.W.2d 647, 650 (Iowa 1989). This preemptive right or right of first refusal ripens into an option when the bank decides to sell the land and the former owner decides to purchase it. *Id. Accord Knepper v. Monticello State Bank,* 450 N.W.2d 833, 836 (Iowa 1990). There is a crucial difference between a preemptive right and an option. That difference is that the holder of a preemption has no right to compel the landowner to sell, while the holder of an option does. *Knepper,* 450 N.W.2d at 836–37.

■ Contracts are either express or implied. A contract is express if the parties reach it by words. In contrast, a contract is implied if the parties manifest it by their conduct. *Duhme v. Duhme,* 260 N.W.2d 415, 419 (Iowa 1977).

■ There are two types of implied contracts: implied in fact and implied in law. Robert A. Hillman, *Contracts, Remedies, Equity, and Restitution in Iowa* § 3.2(c), at 61 (1979) [hereinafter Hillman]. We have already spoken of the implied in fact contract. As to these, all of the traditional rules of contract law—offer and acceptance, consideration, and breach—apply. Hillman at 61.

In contrast, implied in law contracts—also known as constructive or quasi-contracts—rest on a legal fiction arising from considerations of justice and the equitable principle of unjust enrichment. *Id.* Such contracts do not arise from bargaining. And so, they are not real contracts. For that reason, the general rules of contracts do not apply to them. *Id.* In short, a quasi-contract is "simply a rule of law that requires restitution to the plaintiff of something that came into the defendant's hands but belongs to the plaintiff." Dan B. Dobbs, *Handbook on the Law of Remedies* § 4.2, at 235 (1973).

■ Applying these principles here, we find there was no express contract between the bank and the Hunters to sell back the 360 acres. Nor do we find any facts to support an implied in fact contract to do so. Quasi-contract principles do not apply because the bank did not enjoy any unjust enrichment at the expense of the Hunters. Nothing came into the bank's hands that belonged to the Hunters. The bank obtained the land by foreclosure, a statutory remedy.

We agree with the bank and Kniep that to apply contract or quasi-contract principles to these facts would be at odds with the preemption or right of first refusal principles we announced in *Black* and *Knepper.* The district court had it exactly right:

> The purpose of [section 524.910(2) ] is to reduce foreclosure losses by making it possible for the former owners to get their farms back. [*Knepper,* 450 N.W.2d at 836.] From this statement of purpose the Hunters discern a legislative mandate that the bank dispose of the property in one tract rather than in parcels. Of course the statute itself makes no such requirement. The obvious reason the bank elected this procedure was to minimize its loan loss. This is not contrary to the letter or spirit of the statute. Rather, the legislative scheme contemplates the bank will accept from the original owner the same terms it was willing to take from another.

> No gain or loss to the bank, by virtue of the preemption, is anticipated. The original owners are deprived of nothing. They may still acquire all of the land [statute requires the bank to dispose of all the land within five years]. A piecemeal disposition may even benefit them by affording an opportunity to reacquire part of the land if they could not afford all of it.

The court concludes that the good faith disposition of foreclosed farmland by the bank in parcels of less size than the original acquisition is not prohibited by the statute.

## IV. *The 42 U.S.C. Section 1983 Claim.*

 The Hunters' final contention is that the bank and Kniep by their actions violated their civil rights under 42 U.S.C. section 1983. The Hunters predicate their 42 U.S.C. section 1983 claim upon the bank's and Kniep's violation of their rights under Iowa Code section 524.910(2). Because we find no such violation, the Hunters have no corresponding right to recover under 42 U.S.C. section 1983. The district court was correct in reaching the same conclusion.

## V. *Disposition.*

Our review leads us to four conclusions. First, the district court on remand properly decided the merits through a review of the transcripts, briefs, and upon hearing oral arguments. There was therefore no abuse of discretion in following this option under Iowa Rule of Civil Procedure 367(b).

Second, each of the notices the bank sent the Hunters adequately apprised them of the information required under Iowa Code section 524.910(2). Any deviation from the terms originally proposed or inconsistency in one notice did not detract from the adequacy of the four notices. The notices substantially complied with what was required under section 524.910(2). Therefore, no new notices were required. Because the notices complied with the law, no procedural due process was violated.

Third, there was no express or implied in fact agreement between the parties requiring the bank to offer the Hunters the land in one parcel. Nor did section 524.910(2) create a quasi-contractual agreement to do so.

Last, because the bank and Kniep fully complied with section 524.910(2), they did not violate the Hunters' civil rights under 42 U.S.C. section 1983.

Like the district court, we too are not unsympathetic to the plight of farmers. But here the Hunters were fully apprised of legal rights they alone could exercise to regain the land they lost through foreclosure. Because the Hunters elected to sit on their rights, we must affirm the decision of the district court affording them no remedy.

**AFFIRMED.**