Walter Croskey and Genevieve Croskey, Plaintiffs,

v.

William Phillips; Judith Phillips; Charles Rager and Dianne Rager, Husband and Wife; Black Hawk Development Corp.; and Henry Schminke, Defendants,

Chris KUEHL, Glenn Kuehl, and Nancy Kuehl, Appellees,

Morris ECKHART, Appellant.

No. 98–650.

Supreme Court of Iowa.

March 22, 2000.

Kevin H. Collins, Diane Kutzko, and Davie T. Hayes of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

Eric W. Johnson of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellees.

SNELL, Justice.

This is an appeal from an order quashing an execution sale sought by Morris Eckhart, a junior lien holder inadvertently omitted from a foreclosure action. The district court, without elaboration, limited Eckhart's relief to equitable rights of redemption. Eckhart claims the court's ruling deprives him of due process under *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

We conclude that, because the court's order quashing the sale nevertheless preserved Eckhart's redemption rights as a junior lien holder under Iowa Code chapter 628 (1997), no due process violation occurred. We therefore affirm.

### I. Background Facts and Proceedings

On March 15, 1988, Morris Eckhart obtained a judgment against Black Hawk Development Corporation in an action for the foreclosure of a real estate contract, in the amount of $197,057.45 and thereafter had a judgment against the property now in dispute. At that time, Eckhart's interests in the land were subordinate to those of the mortgagee, Statesman's Bank for Savings, and two judgment liens, one held by William and Genevieve Croskey, the other by Richard R. Morris.

In January 1990, Statesman's Bank foreclosed its mortgage, and a judgment was rendered on its behalf for approximately $56,000. An execution sale was then scheduled for May 10. All interested parties received notice of the pending sale with the exception of Eckhart. At auction,

Statesman's Bank purchased the property for $34,000, and shortly thereafter resold the premises to appellee, Chris G. Kuehl, the party now in possession.

In January 1998, just prior to the expiration of the statute of limitations, Eckhart requested a general execution issue against the real estate in satisfaction of his lien, as well as those formerly held by Croskey and Morris, which Eckhart now claims to have at some point acquired. Kuehl moved to quash, and the district court ruled in his favor, vacating the general execution order, and limiting Eckhart's right of enforcement to equitable redemption.

Eckhart appeals contending he is a valid lien holder in a priority position, and as such, he is now entitled to an execution sale. Specifically, Eckhart argues that in limiting his remedy to equitable redemption, the trial court impermissibly infringed upon his interests in the property, and violated his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

## II. Scope of Review

Cases tried in equity are reviewed de novo. Iowa R.App. P. 4. Courts are thus afforded some flexibility in determining the equities between the parties. *First Nat'l Bank in Humboldt v. Iowa Growthland Fin. Corp.*, 523 N.W.2d 591, 596 (Iowa 1994) (citations omitted). Such courts are, however, bound by statute, and in the absence of fraud or mistake, equity must follow the law. *Id.*

## III. Analysis

Reforeclosure and equitable redemption are the remedies most often afforded junior lien holders not made a party to the original foreclosure action. Nelson & Whitman, *Real Estate Finance Law* § 7.15, at 594–95 (3d ed.1994) [hereinafter Nelson & Whitman]. Although the availability of these remedies varies by state, it is well established that an omitted junior lien holder in Iowa has the right to redeem

under the statute, or if the statutory period of redemption has expired, to equitable redemption. *Nelson v. First Nat'l Bank*, 199 Iowa 804, 805, 202 N.W. 847, 848 (1925); *Albee v.. Curtis*, 77 Iowa 644, 647, 42 N.W. 508, 508 (1889). Equitable redemption is designed to secure for the omitted party, the rights it would have been due, had notice been given. *See* 55 Am.Jur.2d *Mortgages* § 890, at 463–64 (1996); Nelson & Whitman § 7.15, at 594; 4 Richard R. Powell, *Powell on Real Property* § 37.37(13) (1999). Rights available to parties in a foreclosure action include the following:

Iowa Code section 628.3:

The debtor may redeem real property at any time within one year from the day of sale, and will, in the meantime, be entitled to the possession thereof; and for the first six months thereafter such right of redemption is exclusive. Any real property redeemed by the debtor shall thereafter be free and clear from any liability for any unpaid portion of the judgment under which said real property was sold.

. . . .

Iowa Code section 628.5:

If no redemption is made by the debtor as above provided, thereafter, and at any time within nine months from the day of sale, said redemption may be made by a mortgagee before or after the debt secured by the mortgage falls due, or by any creditor whose claim becomes a lien prior to the expiration of the time allowed for such redemption.

. . . .

Iowa Code section 628.11:

The terms of redemption, when made by a creditor, in all cases shall be the reimbursement of the amount bid or paid by the holder of the certificate, including all costs, with interest the same as the lien redeemed from bears on the amount of such bid or payment, from the time thereof.

. . . .

Iowa Code section 628.13:

> The terms of redemption, when made by the titleholder, shall be the payment into the clerk's office of the amount of the certificate, and all sums paid by the holder thereof in effecting redemptions, added to the amount of the holder's own lien, or the amount the holder has credited thereon, if less than the whole, with interest at contract rate on the certificate of sale from its date, and upon sums so paid by way of redemption from date of payment, and upon the amount credited on the holder's own judgment from the time of said credit, in each case including costs....

■ Direct application of these statutes is of course limited to those parties actually included in, or cognizant of, the foreclosure. No provision is made for the plight of the omitted junior lien holder who does not learn of the proceeding until after the statutory period of redemption has expired. When legal procedures are inadequate, many courts seek lawful results through equity. 30A C.J.S. *Equity* § 118, at 335 (1992). Equity, as we have said, must follow the law. *Humboldt*, 523 N.W.2d at 596. But when the dictates of a statute are such that strict adherence is impossible under the circumstances, as in the present case, we interpret this maxim to mean that equity should observe the intent of the law in securing the parties' interests. 30A C.J.S. *Equity* § 118, at 336. When no rule of law is directly applicable, equity follows by way of analogy. *Id.* § 118, at 337; *Wright v. Leclaire,* 3 Iowa 221, 233 (1856). We are thus left to balance the equities between the omitted lien holder and the titleholder, keeping in mind the intent of the legislature and the overall purpose of the statutory framework. To that end we have held that

> a junior encumbrancer, who, not having been made a party to a foreclosure of a prior mortgage, afterwards redeems, redeems not the premises, strictly speaking, but the prior encumbrance, and he is entitled, not to a conveyance of the premises, but to an assignment of a security. Therefore, if the prior mortgagee in such case has become the purchaser at the foreclosure sale, and has thus acquired the equity of redemption of the mortgaged premises, the junior mortgagee upon redeeming is not entitled to a conveyance of the estate, but to an assignment of the prior mortgage; whereupon the prior mortgagee, as owner of the equity of redemption, may, if he chooses, pay the amount due upon the junior mortgage, redeeming that.

*Smith v. Shay,* 62 Iowa 119, 121–22, 17 N.W. 444, 444–45 (1883) (citations omitted).

Our decision in *Shay* essentially extended the statutory period of redemption as between the titleholder and the omitted lien holder; the exception of course being that, if, at the end of the period the omitted lien holder has retained possession of the sheriff's certificate, it must foreclose its interest in the property rather than taking title outright. *Id.* We have never wavered from this position. This exception notwithstanding, the terms of an equitable redemption can otherwise be satisfied through recourse to the statutes.

■ On appeal, Eckhart argues redemption is inadequate. He posits that Statesman's failure to provide notice of the original foreclosure proceedings deprived him of valuable rights, namely, the right to bid at auction and to secure a fair market price for the property. This deprivation, he avers, cannot be cured through redemption. We are thus urged to abandon our long held practice, and to embrace reforeclosure in the manner adopted by several other states. Anything less, Eckhart asserts, violates his due process rights under the Fourteenth Amendment.

In support of this contention Eckhart cites *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), wherein the Supreme Court examined an Oklahoma probate statute that barred claims by cred-

itors who failed to come forth within two months of the publication of a specialized notice. The Court held that the Due Process Clause of the Fourteenth Amendment required actual notice be given to "reasonably ascertainable" creditors of the estate, and that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Pope,* 485 U.S. at 485, 108 S.Ct. at 1345, 99 L.Ed.2d at 575 (quoting *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188 (1983)).

Here, Eckhart notes that his lien was duly recorded one to two years prior to Statesman's foreclosure action, and that his identity was easily ascertainable by all who took part in the sale, or who took title to the land thereafter. Since notice was never formally proffered Eckhart, he argues that a denial of the right to foreclosure at this juncture impermissibly impairs his interests in the property and his right to due process under *Pope.*

Eckhart's reliance on *Pope* is misplaced. In that case, the Court overruled a decision by the state court, which served to completely extinguish the rights of a creditor without first providing adequate notice. Unlike the situation in *Pope,* our scheme is designed to put omitted lien holders in as nearly the same position they would have been, had notice of foreclosure been tendered. We do not perceive a conflict between our holding and that of *Pope.*

Nor are we convinced a departure from our reliance on equitable redemption is warranted or prudent. Our approach, we think, is an appropriate balancing of the equities. It permits omitted junior lien holders the opportunity to redeem and to seek relief through recourse to the statutes. Eckhart is in nearly as good a position now as he would have been had he been made a party to the original foreclosure. We find his contentions without merit, as have other courts hearing similar arguments. *See, e.g., More v. United States,* 505 F.Supp. 612, 614 (N.D.Fla. 1980); *Baldi v. Chicago Title & Trust Co.,* 113 Ill.App.3d 29, 68 Ill.Dec. 808, 446 N.E.2d 1205, 1207 (1983). The judgment of the district court is affirmed.

**AFFIRMED.**

All justices concur except McGIVERIN, C.J. and CARTER, J., who take no part.