# IN THE SUPREME COURT OF IOWA

No. 19–1689

Submitted November 17, 2021—Filed December 3, 2021

**WAYNE JOSEPH MLADY,**

Appellant,

vs.

**SUE ANN DOUGAN,**

Appellee,

_____

GREAT WESTERN BANK,

Plaintiff,

vs.

CONRAD D. CLEMENT, MANACO, CORP., and PARTIES IN POSSESSION,

Defendants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Howard County, John J. Bauercamper, Senior Judge.

The assignee of redemption rights seeks further review of the court of appeals decision holding that the attempted redemption was untimely and the default interest rate controlled. **DECISION OF COURT OF APPEALS**

**AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Waterman, J., delivered the opinion of the court, in which all participating justices join. McDermott, J., takes no part.

Lynn Wickham Hartman (argued) and Dawn M. Gibson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

John L. Duffy (argued) of Heiny, McManigal, Duffy, Stambaugh & Anderson, P.L.C., Mason City, for appellee.

Robert L. Hartwig of Iowa Bankers Association, Johnston, for amicus curiae Iowa Bankers Association.

**WATERMAN, Justice.**

Close only counts in horseshoes and hand grenades, not our redemption statute. An attorney representing a sophisticated investor underpaid the amount necessary to redeem farmland by at least $1,798.79 below the minimum owed of $1,938,799.79 (exclusive of costs). The district court ruled the redemption was timely and resolved the parties' dispute over the interest rate by ruling that the contract default rate of 21% controlled, not the 4.25% nondefault rate. Both sides appealed, and we transferred the case to the court of appeals, which affirmed the 21% interest rate but held the attempted redemption was untimely. We granted the attempted redeemer's application for further review.

On our review, we too affirm the district court ruling that the contractual default interest rate of 21% applies. We adhere to the letter of our redemption statutes and precedent and affirm the court of appeals decision requiring timely full payment of the amount necessary. We decline to grant equitable relief under these circumstances because to do so would undermine the predictability and certainty so important for the marketability of farmland after foreclosure.

**I. Background Facts and Proceedings.**

Conrad Clement owned 208 acres of farmland in Howard County subject to a mortgage from Great Western Bank. When Clement failed to make payments, the bank obtained a default judgment and instituted foreclosure proceedings. The foreclosure was based on two unpaid promissory notes with the same interest rates: an initial rate of 4.25% and a default rate of 21%. Each note provided that "[u]pon default, including failure to pay upon final maturity, the

interest rate on [these notes] shall be increased to 21.000% per annum based on a year of 360 days." The date of maturity for both notes was September 28, 2015. The default rate had been triggered by Clement's failure to pay them off by that date. The notes do not contain a cure provision allowing a postdefault reversion back to the nondefault rate. On March 24, 2017, the district court entered a decree of foreclosure allowing a sheriff's sale with "a one-year period of redemption exclusive to [Clement] following any such sheriff's sale."

On May 22, Wayne Joseph Mlady purchased the property at a sheriff's sale for $1,600,001. The sheriff issued a "Certificate of Purchase" that provided for a one-year redemption period expiring on May 22, 2018. The notice of sheriff's sale and the underlying default judgment both indicated the default interest rate of 21% and the per diem interest of $933.34.[1]

On March 28, 2018, Clement assigned his redemption rights to a creditor, Sue Ann Dougan. Two days later, Dougan deposited $1,690,000 with the Howard County Clerk of District Court.[2] Dougan asked the clerk to tell her the interest rate. The clerk told Dougan to ask the district court.

On April 2, Dougan filed a petition under Iowa Code section 628.21 (2017) asking the court to set the interest rate at 4.25%. Mlady filed an answer asserting the applicable interest rate is 21% and challenging the validity of Clement's assignment to Dougan. On April 25, the district court, without determining the

---

[1]The parties agree the per diem interest is $933.33 for the default interest rate. The notice of sheriff's sale and default judgment have a minor math error.

[2]Neither party is collecting interest on the money deposited with the clerk.

interest rate, denied Dougan's petition on grounds that her assignment was invalid because redemption rights were exclusive to Clement.

On May 9, Dougan moved for a new trial and for the court to reconsider, enlarge, and explain its ruling and also requested that the court "schedule a hearing on an expedited basis" to determine the applicable rate of interest. At her counsel's instruction, Dougan deposited an additional $247,001 with the clerk on May 21 as a protective payment in the event it was adjudicated that she owed the default interest rate. Her counsel, however, miscalculated the amount of interest that had accrued at the 21% rate. On May 22, or the last day within the redemption period, Mlady filed his resistance to Dougan's motion and Dougan applied for a stay of the issuance of the sheriff's deed.

On May 23, Mlady filed his resistance to the stay. The district court held a hearing on Dougan's request for a stay, which was denied. Mlady obtained the sheriff's deed to the property, allowing him to plant crops for the 2018 season. On May 24, Dougan deposited an additional $200,000 with the clerk to serve as a bond, filed her notice of appeal, and asked the district court to recall the deed. Mlady resisted. Because "the property is currently in the possession of Mr. Mlady," the district court set bond at $20,000 and did not "require the return of the deed" that was "conveyed prior to appeal."

We transferred the case to the court of appeals. The court of appeals reversed the district court on March 20, 2019, concluding "Dougan's assignment was valid and enforceable" and remanding the case for the district court to determine if Dougan's redemption was timely.

At the hearing on remand, Dougan testified she is entitled to redeem if the trial court determines that she paid the correct amount. Mlady testified he understood the applicable interest rate to be the default rate (or 21%) and would not have otherwise purchased the property. Both parties filed posthearing briefs supporting their positions.

Dougan argued 4.25% is the applicable contract interest rate and she timely redeemed the property because she deposited $1,937,001 before the May 22, 2018 deadline. If the interest rate is 4.25%, Dougan timely deposited more than sufficient funds with the clerk and is entitled to a refund. If the interest rate is 21%, Dougan argued the March 2018 deposit of $1,690,000 covered the outstanding interest and reduced the principal amount to $270,609, which thereby lowered the amount of interest accruing daily such that her second payment exceeded the amount required to redeem.

Mlady argued the applicable interest rate is the 21% contract default rate and Dougan was required to pay at least $1,938,799.79 by May 22, 2018, to redeem the property. The $1,938,799.79 includes Mlady's purchase price and interest owed at 21% for 363 days but does not include court costs.[3] Because Dougan only deposited $1,937,001 total, Dougan was at least $1,798.79 short when the redemption period expired and failed to timely redeem the property. Mlady argued Dougan was not entitled to "a set-off interest payment[] because she made an initial partial payment to the Clerk of Court."

---

[3]Mlady further argues he "paid $8,513.00 on June 14, 2018, and $8,795.00 on June 17, 2019, in property taxes on the real estate at issue and has paid $235.00 in court costs, $175.00 in accrued costs, and $189.24 in sheriff fees," which should be reimbursed.

On June 12, the district court decided Dougan "validly exercised the right to redeem" the property and the applicable interest rate was the default rate and directed that the clerk shall pay the funds to Mlady. Both parties filed motions requesting that the court reconsider its ruling. Mlady urged the court to reverse its determination that Dougan timely redeemed and argued interest continues to accrue after he obtained the deed. Dougan argued Mlady is not entitled to interest after he received the deed on May 23, 2018, and requested, as a matter of equity, she be allowed to pay the $1,798.79 shortfall after the one-year redemption deadline.

On September 28, the district "court confirm[ed] its prior holding that Dougan has properly and timely exercised the right of redemption." The court ruled that "Dougan's obligation to pay accruing interest to Mlady on the redemption balance ended as of May 23, 2018," and further ruled that "Mlady is entitled to a payment of $1,938,799.79 for certificate of purchase." The district court ordered the court costs "of the proceedings held pursuant to remand" are split evenly between the parties and allowed Dougan to deposit the additional $1,798.79.

Both parties appealed. Mlady argues the district court correctly applied the 21% default interest rate but erred by ruling that Dougan had timely redeemed because there is no statutory entitlement to make a late payment or any grounds for equitable relief. In the alternative, Mlady argues he is entitled to additional interest if Dougan's redemption is upheld. Dougan argues the district

court correctly found she timely redeemed the property and that the 4.25% rate controls.

We again transferred the appeal to the court of appeals, which affirmed the district court's ruling that the default interest rate of 21% applied but reversed the ruling that Dougan timely redeemed. The court of appeals determined that "Dougan failed to strictly comply with the statutory requirement to pay the full amount due within the redemption period." Dougan applied for further review, which Mlady resisted. We granted Dougan's application and allowed the Iowa Bankers Association (IBA) to file an amicus curiae brief supporting Mlady's argument for the default interest rate. The IBA argued a contrary holding would "substantially raise the risk of financing agricultural and commercial transactions across the state" and erode the certainty required for the "financial institutions and other buyers or investors who bid at sheriff sales on foreclosed real estate."

**II. Standard of Review.**

"Because the case was tried in equity, our review is de novo." *Decorah State Bank v. Wangsness*, 452 N.W.2d 438, 439 (Iowa 1990). "We give weight to the factual findings of the trial court, but we are not bound by them." *Id.* "We review questions of statutory interpretation for correction of errors at law." *Standard Water Control Sys., Inc. v. Jones*, 938 N.W.2d 651, 656 (Iowa 2020).

**III. Analysis.**

We must decide two interrelated issues: the interest rate and the timeliness of the attempted redemption. We begin our analysis by reiterating

longstanding requirements. "The right to redeem is purely statutory." *First Nat'l Bank of Glidden v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 53 (Iowa 1987) (en banc). And it may only be exercised as the statute prescribes. *Id.*; *see also Nw. Mut. Life Ins. v. Hansen*, 218 N.W. 502, 505 (Iowa 1928) ("The right of redemption is purely a statutory proceeding, and the provisions of the statute relative thereto must be strictly complied with."). The legislature "carefully weighed the respective rights of debtors and lenders and kept in mind the fact that for financing to be available the [statutory] scheme had to be fair for both lenders and borrowers." *Farmers Tr. & Savs. Bank v. Manning*, 359 N.W.2d 461, 465 (Iowa 1984). "The statute confers on the court no discretion nor power of mercy in relation thereto." *Tharp v. Kerr*, 119 N.W. 267, 269 (Iowa 1909).

We agree with the court of appeals and district court that the contract default interest rate of 21% applies, as urged by Mlady and the IBA, not the nondefault rate of 4.25%, as urged by Dougan. The underlying notes were in default, triggering the higher rate with no right to cure that restores the lower interest rate. And Dougan's early partial payment of $1,690,000 to the clerk on March 30 did not reduce the daily accrual of interest.

We agree with the court of appeals that Dougan's effort to redeem fails as untimely. The parties agree that based on the 21% interest rate and without the partial payment reducing the principal accruing interest, Dougan's combined payments of $1,937,001 within the one-year redemption period fell short by $1,798.79, or 0.09277853% of the total amount ordered by the district court—$1,938,799.79. Close enough? The court of appeals correctly answered no. The

governing statutes require timely payment in full, and our precedents do not allow postdeadline payments to make up the difference. We elaborate on each issue in turn.

**A. The Interest Rate.** Iowa Code section 628.13 sets forth requirements for redemption. "Section 628.13 requires payment of interest 'at contract rate' from the date of sale." *Fed. Land Bank of Omaha v. Bryant*, 445 N.W.2d 761, 763 (Iowa 1989). "In cases involving redemption after foreclosure of *fixed*-rate mortgages, we have held that the mortgage rate, not the statutory judgment rate of interest, prevailed, and a redeeming party was required to pay interest at that rate until the time of redemption." *Id.*

In *Federal Land Bank of Omaha v. Bryant*, the "note provided for a variable rate, and the rates fluctuated substantially from the time of the filing of the foreclosure petition until the time of the proposed redemption." *Id.* We held that "there should be no difference whether a borrower redeemed under a variable rate loan or one with a fixed rate; interest runs from the date of the note until redemption *at the rate provided for in the note.*" *Id.* (emphasis added). Interest for redemption should be calculated as if the redeemer was "simply paying off the loan; in other words, it should be computed at the variable rate until the date of redemption." *Id.*

It is settled law that a default under the contract triggers the higher default interest rate. As we explained in *Federal Land Bank of Omaha v. Wilmarth,*

> When a loan is made which is evidenced by a promissory note and secured by a mortgage, the parties have a right to contract in reference to the rate of interest. Everywhere it is realized that a note

> not in default is more desirable than a note in default. It is well known that a note not in default can be financed at a lower rate of interest than the rate at which a note can be financed when the same is in default. So the lender and the borrower, in contemplation of this fact, when the note is made, provide for the contingency. By so doing, the borrower and lender simply agree, consistent with business principles, that, when the note is not in default, it shall bear the interest rate applicable to that situation, and they agree that, when the same is in default, it shall bear the added interest rate consistent with business principles relating to that event.

252 N.W. 507, 510 (Iowa 1934). This timeless business reality is reflected in the underlying notes with the higher default interest rate.

Dougan argues that Mlady's payment at the foreclosure sale restored the nondefault interest rate on the theory the notes were no longer in default. He relies on *Royal Manor Apartments, LLC v. Federal National Mortgage Ass'n*, 614 F. App'x 228, 235–36 (6th Cir. 2015). But that case involved different contract language allowing for a cure to restore the lower rate, by providing that "[u]nder the terms of the note, the default interest rate . . . applies only so long as payments remain past due for 30 days or more; otherwise, the [baseline] rate . . . applies." 614 F. App'x at 236. By contrast, here, the underlying notes contain no cure provision that allows a reversion back to the nondefault interest rate after Clement's default. Dougan, by assignment, stepped into Clement's shoes and is bound by the default interest rate in both notes. There is no basis in the contract language, law, or equity for the debtor's assignee to revert back to the nondefault interest rate.

We hold the 21% interest rate applies and accrued at a daily rate of $933.33 until payment in full within the statutory deadline. A contrary holding would raise the costs of borrowing to finance farm operations and would

undermine the clarity and certainty required for farm lenders and purchasers. As the ABI argues, knowing the precise amount and deadline to pay is important for the marketability of foreclosed agricultural property and related financing because

> [t]hese objective parameters are crucial for financial institutions and other buyers or investors who bid at sheriff sales on foreclosed real estate. The statutory process cannot be a guessing game for these certificate holders, and a subjective extension of the redemption period for equitable reasons would negatively impact attracting qualified bids at foreclosure sales. Any "chilling" effect by a ruling injecting such subjectivity into the redemption process will be factored by financial institutions when pricing loans, particularly in the agricultural and commercial area where redemption is available for debtors under existing Iowa law.

We agree.

**B. The Partial Payment.** Dougan acknowledges her first payment of $1,690,000 on March 30, 2018, was calculated on a 4.25% interest rate, not the 21% default rate. Attempting to hedge her bet on the interest rate, she made an additional payment of $247,001 on May 21, the day before the redemption period expired. This too fell short, based on a math error by her own attorney. Dougan belatedly argued the first payment to the clerk lowered the amount of interest accruing daily. Not so under our precedent. "[A] redeeming party [is] required to pay interest at [the contract] rate until the time of redemption." *Bryant*, 445 N.W.2d at 763. And a deposit of less than the necessary amount with the clerk is "not a sufficient tender which would deprive [the certificate holder] of his right to interest thereafter." *Waterloo Sav. Bank v. Carpenter*, 9 N.W.2d 818, 821 (Iowa 1943).

In *Waterloo Savings Bank v. Carpenter*, the necessary amount to redeem the property exceeded $11,000. *Id.* at 819. The redeemer first deposited $9,264.81, and the certificate holder was permitted to withdraw the amount. *Id.* at 819, 821. The redeemer made a second deposit of $3,300.83 "to be held by the clerk subject to the adjudication of the rights of the contending parties." *Id.* at 819. We concluded the "first deposit, $9,264.81, was about $3,300 less than the liquidated amount then due" to the certificate holder and the subsequent deposit was not a tender. *Id.* at 821. Thus, the district court properly required the redeemer to pay interest on the entire amount. *Id.* Here, the amount remained on deposit with the clerk, accruing interest for neither Mlady nor Dougan. Mlady did not receive the partial payment when it was deposited with the clerk and could not use the funds before the full amount was deposited. *Carpenter* remains good law. We decline to overrule our precedent requiring full payment within the redemption period to stop interest from accruing.

**C. Dougan's Attempted Redemption Was Untimely.** The legislature codified redemption provisions that "favor the prior owner of agricultural land 'over some other prospective purchaser.'" *Wangsness*, 452 N.W.2d at 440 (quoting *Knepper v. Monticello State Bank*, 450 N.W.2d 833, 837 (Iowa 1990)). "Such preferential treatment serves the legislative goal of reducing foreclosure losses 'by making it possible for affected farmers to regain their farms.'" *Id.* (quoting *Knepper*, 450 N.W.2d at 837). Clement is the prior owner of the farm property, not Dougan, his creditor. We see no valid path to rescue Dougan from her attorney's math error without undermining the marketability of agricultural

land through clear, enforceable requirements for redemption. *See Manning*, 359 N.W.2d at 465 (noting the importance of marketability of title and availability of financing).

The requirements for redemption are well settled. "During the one-year redemption period, the debtor may redeem the property by paying the sale price plus the remaining amount of the certificate holder's lien, including costs and interest." *Matt Bauer Farms Corp.*, 408 N.W.2d at 53 (citing Iowa Code § 628.13). Based on the applicable 21% interest rate, Dougan had to pay at least $1,938,799.79 by the one-year redemption deadline of May 22, 2018. She actually paid $1,937,001 by that date—$1,798.79 below the amount the district court ordered—exclusive of court costs. Under these circumstances, we must conclude that she failed to timely redeem the property.

The one-year deadline to redeem is statutory. Iowa Code § 628.3 ("The debtor may redeem real property at any time within one year from the day of sale."). Courts of equity are "bound by statute, and in the absence of fraud or mistake, equity must follow the law." *Kuehl v. Eckhart*, 608 N.W.2d 475, 477 (Iowa 2000) (en banc). Dougan does not claim Mlady, the clerk, or the court gave her the wrong payoff amount. The 21% default interest rate and per diem amount are reflected in the underlying judgment, the notice of sheriff's sale, and Mlady's answer. Dougan was well aware of the 21% default interest rate and intended to deposit enough money with the clerk to pay off the accrued interest at that rate. Dougan's attorney simply miscalculated the amount and cannot blame any other party for that math error.

We have repeatedly enforced the statutory redemption deadline and required timely payment in full. *See Fed. Land Bank of Omaha v. Heeren*, 398 N.W.2d 839, 844 (Iowa 1987) ("[T]he statutory redemption period of Iowa Code section 628.3 should not be extended."); *Hansen*, 218 N.W. at 505 (requiring strict compliance with redemption statute, including timely payment of full amount); *Tansil v. McCumber*, 206 N.W. 680, 686 (Iowa 1925) ("Defendants cannot redeem except on condition of paying the whole debt actually owing."); *Iowa Loan & Tr. Co. v. Kunsch*, 135 N.W. 426, 428 (Iowa 1912) ("[H]e certainly was not entitled to [a redemption] order until he had complied with the statutory requirements including the payment into the clerk's office of the amount necessary to redeem."); *Case v. Fry*, 59 N.W. 333, 334–35 (Iowa 1894) (holding property was not timely redeemed when "[t]he defendant knew [the deposit] was not enough to satisfy the judgment of plaintiff, but proceeded on the theory that the law did not require him to satisfy it"); *see also Sibley State Bank v. Zylstra*, No. 19–0126, 2020 WL 4814072, at *7 (Iowa Ct. App. Aug. 19, 2020) (holding partial payment insufficient to redeem parcels and declining equitable relief). Dougan failed to meet the statutory deadline for full payment.

Dougan relies on several cases allowing equitable relief when the clerk provided the wrong payoff amount. *See Olson v. Sievert*, 30 N.W.2d 157, 159 (Iowa 1947) (allowing late redemption when deputy clerk gave wrong amount and the redeemer's failure to discover the clerk's error was not negligent); *Wakefield v. Rotherham*, 25 N.W. 697, 698 (Iowa 1885) (allowing late redemption for clerk's error when the redeemer "was guilty of no negligence in the matter"). Those cases

are readily distinguishable because the clerk did not provide Dougan with the wrong payoff amount. Rather, Dougan's own attorney made a mathematical error.

The court of appeals recently held the party seeking to redeem must ascertain the correct amount to deposit with the clerk, stating, "The clerk of court had no duty to inform Zylstra of the redemption amount. Instead, the responsibility to seek the correct payoff amount from the [certificate holder] bank or its attorney rested with Zylstra as the assignee of the debtors. He shirked that responsibility." *Zylstra*, 2020 WL 4814072, at *7 (citation omitted). We agree. We have never held that an error made by the redeemer or the redeemer's attorney in determining the necessary payoff amount extended the one-year deadline.

Iowa Code section 628.21 provides a mechanism for resolving disputes over the payoff amount before the redemption period expires. Dougan filed a petition under that statute for a judicial determination of the disputed interest rate, and it is unfortunate that the district court erroneously ruled her assignment was invalid without adjudicating the interest rate. But judicial silence as to the correct interest rate did not relieve Dougan from the requirement to deposit the necessary amount with the clerk:

> In case any question arises as to the right to redeem, or the amount of any lien, the person claiming such right may deposit the *necessary amount* therefor with the clerk, accompanied with the affidavit above required, and also stating therein the nature of such question or objection, which question or objection shall be submitted to the court as soon as practicable thereafter, upon such notice as it shall prescribe of the time and place of the hearing of the controversy, at which time and place the matter shall be tried upon such evidence and in such manner as may be prescribed, and the proper order made and entered of record in the cause in which

execution issued, and the money so paid in shall be held by the clerk subject to the order made.

Iowa Code § 628.21 (emphasis added). Under the plain language of this statute, "a deposit of the necessary amount to make redemption must be made with the clerk." *Hansen*, 218 N.W. at 505. In other words, the risk of underpayment fell on Dougan.

Under these circumstances, when the statutory requirements are clear, the court has "no discretion nor power of mercy" to allow redemption. *Cent. State Bank v. Lord*, 215 N.W. 716, 718 (Iowa 1927). We hold that Dougan's failure to pay the full amount within the one-year anniversary of the sheriff's sale is fatal to her right of redemption. The court of appeals correctly held her attempted redemption failed as untimely. We reverse the district court on this issue.

**IV. Conclusion.**

For these reasons, we affirm the decision of the court of appeals. We affirm the district court ruling applying the default interest rate of 21%. We reverse the district court ruling that found Dougan timely redeemed. We remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except McDermott, J., who takes no part.